**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **vs.** | : | |
| | : | **NO. 15-CR-114** |
| **AMIN DE CASTRO** | : | |


## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                    **September  13 , 2021**


Amin De Castro has filed a counseled Petition for Writ of Error *Coram Nobis* by which he seeks to vacate his 2017 conviction of being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A).  Because the case upon which De Castro relies in support of his petition is not to be retroactively applied on collateral review and because he has not satisfied the requirements for plain error relief, the petition will be denied.

## FACTUAL BACKGROUND

De Castro is a native of the Dominican Republic, who initially entered the United States on a passport from that country.  In August 2012, he married a United States citizen.  In January 2014, his wife submitted a Petition for Alien Relative (Immigration Form I-130) on his behalf.  U.S. Citizenship and Immigration Services issued a Notice approving the petition on June 10, 2014. On July 25, 2014, the U.S. Department of State notified De Castro that his immigrant visa application was eligible for further processing by the National Visa Center.

On September 22, 2014, a Philadelphia Police officer approached De Castro outside a vacant flower shop on the 1800 block of North 31st Street, believing he fit the description of a suspect

who reportedly had pointed a gun at children at that location. De Castro complied with the officer's request that he take his hand out of his pocket and in doing so, he revealed a pistol grip protruding from his pocket.  The officer removed the weapon—a loaded Bersa Thunder .380 caliber pistol— and asked De Castro if he had identification or a license to carry a firearm.  De Castro, who admits that he knew he was an alien, acknowledged that he had neither.  He was arrested that day and was later charged by indictment with the offense of being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A).

De Castro was tried before a jury and convicted on September 27, 2016.  However, the conviction was vacated and a new trial ordered on February 3, 2017, when the undersigned granted De Castro's Motion for a New Trial, finding trial counsel provided constitutionally deficient representation.  In lieu of a new trial, De Castro opted to plead guilty.  He was sentenced to time-served, a two-year period of supervised release, and a special assessment of $100.00.  He appealed from the judgment of sentence, which the Third Circuit affirmed on October 29, 2018.

In the Petition for Writ of Error *Coram Nobis*, De Castro avers that on May 4, 2017, an Immigration Judge found he qualified as a lawful permanent resident and granted his request for voluntary departure to the Dominican Republic.  He is thus no longer in custody and is not eligible for relief under 28 U.S.C. § 2255.  He filed the instant petition on July 22, 2020, seeking relief from his conviction on the ground that the Government failed to prove he knew he was an alien who was illegally or unlawfully in the United States in compliance with the U.S. Supreme Court's June 21, 2019 decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  The Government responded to the petition on December 17, 2020, and the Court held oral argument on the petition on April 14, 2021.

2

**DISCUSSION**

"The writ of *coram nobis* was available at common law to correct errors of fact, … was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment, and was used in both civil and criminal cases." *United States v. Morgan*, 346 U.S. 502, 507 (1954) (citations omitted).[1]  More recently, it has been used as a means of collaterally attacking a criminal conviction for a person who is no longer "in custody" and who therefore cannot seek habeas relief under 28 U.S.C. § 2255 or 28 U.S.C. § 2241. *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013); *Wall v. Kholi*, 562 U.S. 545, 552 (2011). The power and authority to issue the writ emanates from the All Writs Act, 28 U.S.C. § 1651.[2]  *Morgan*, 346 U.S. at 506-507.

"*Coram nobis* is an extraordinary remedy and a court's jurisdiction to grant relief is of limited scope." *Stoneman*, 870 F.2d at 106 (citing *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963)).  *Coram nobis* relief may not issue if alternative remedies, such as habeas corpus, are available. *Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020) (citing *United States v. Denedo*, 556 U.S. 904, 911 (2009)).  "Use of the writ is appropriate to correct errors for which there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier." *Id*. (quoting *Morgan*, 346 U.S. at 512).  Thus, where a party is no longer in custody for

---

[1] *Coram nobis* no longer has application in civil cases, having been abolished by Federal Rule of Civil Procedure 60(b).  *United States v. Stoneman*, 870 F.2d 102, 105 n.6 (3d Cir. 1989).

[2] Titled simply "Writs," Section 1651 reads:

> (a)  The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

> (b)  An alternative writ or rule nisi may be issued by a justice or judge which has jurisdiction.

purposes of § 2255 but faces continuing consequences as a result of being convicted, *coram nobis* can fill that gap. *Id.*; *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011); s*ee also Mendoza v. United States,* 690 F.3d 157, 159 (3d Cir. 2012) ("The rare remedy of a writ of error coram nobis may be 'used to attack allegedly invalid convictions which have continuing consequence, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255.'" (quoting *Stoneman,* 870 F.2d at 105-106)).  "[T]he standard for obtaining relief" pursuant to the writ "is more stringent than that applicable on direct appeal or in habeas corpus." *Ragbir*, 950 F.3d at 62.

At the outset, the Court takes note of the Third Circuit's March 2020 decision in *In re Sampson*, 954 F.3d 159, 161 (3d Cir. 2020) (*per curiam*).  In that case, Petitioner Sampson had sought leave to file a second or successive § 2255 petition.  The onus was therefore on him to show that his motion either contained newly discovered evidence that would have been sufficient to establish that no reasonable factfinder would have found him guilty *or* a new rule of constitutional law made retroactive to cases on collateral review that was not previously available.  28 U.S.C. § 2255(h).  In ruling that Sampson had failed to meet the standard for certification of a second/successive petition, the Third Circuit found that the Supreme Court "did not set forth a new rule of *constitutional* law" in *Rehaif. Id.*  "Rather it addressed what the *statutes* enacted by Congress require for a conviction under 18 U.S.C. §§ 922(g) and 924(a)(2)." *Id. (emphasis in original).*  While Sampson's assertion that the "Supreme Court in *Rehaif*, had overturned a long-established interpretation of an important criminal statute," … "that [did] not transform its decision into a rule of constitutional law." *Id.*  As Sampson had failed to make "the required prima facie showing that his claim rests on a new, retroactively applicable rule of constitutional law," his application to file a second or successive § 2255 motion on the basis of *Rehaif w*as denied.

4

The Court acknowledges that *Sampson* may not be technically binding on this case as it concerned an application to file a second/successive § 2255 application and not a petition for *coram nobis* relief.  However, as *Ragbir, Rhines* and *Stoneman* all counseled, the standard for obtaining relief pursuant to the writ "is more stringent than that applicable on direct appeal or in habeas corpus."   950 F.3d at 62. Thus, the Court believes *Sampson's* reasoning applies and De Castro's petition is properly denied on this basis. Regardless, De Castro's application fails in any event and in recognition of the judicial interests in finality, completeness and economy, the Court shall now explain why.

It has been said that "[c]*oram nobis* relief is limited and seeks out errors of the most fundamental character – the kind that renders the proceeding itself irregular and invalid." *Ragbir, supra.*  Earlier proceedings are presumptively correct and the petitioner bears the burden to show otherwise.  *Id.*  There are "five prerequisites for *coram nobis* relief:  the petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid conviction; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the time of trial; and (5) asserted error(s) of a fundamental kind."  *Id.* Applying this standard, the Court finds that Mr. De Castro has made a satisfactory showing of the five pre-conditions required to merit consideration of his *coram nobis* petition.  As noted, the record evinces De Castro pled guilty to the charge of being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). He was sentenced on April 12, 2017 to time served, two years of supervised release, and a $100.00 special assessment.  On appeal, the Third Circuit affirmed the judgment of sentence, and an Immigration Judge granted his request for voluntary departure to his country of origin.  He is thus no longer in custody, and because he is effectively barred from re-entry to the United States, he suffers from continuing consequences from his conviction. *Rehaif v. United States w*as not decided

5

until June 21, 2019, and thus in the highly unlikely event that it should be deemed retroactively applicable to *coram nobis* petitions, the Court finds that a sound reason would exist to excuse his failure to seek relief earlier.[3]

The Court additionally finds the fourth element—unavailability of the remedy at time of trial—is satisfied.  "Until *Rehaif*, § 922(g) had not been understood as the Supreme Court interpreted it there.  No knowledge-of-status element had previously been perceived in the statute, and no proof of it was required."  *United States v. Nasir*, 982 F.3d 144, 161 (3d Cir. 2020) (en banc).   Hence, at the time of trial and his subsequent decision to plead guilty, a *Rehaif* claim simply did not exist for De Castro.

Finally, the Court finds De Castro is in fact raising an "error of a fundamental kind" in that his request for relief is premised upon the Government's alleged failure to prove an essential element of the offense of which he stands convicted.  It has been established "[t]he term 'fundamental' refers to 'defects which inherently result in a complete miscarriage of justice…; the kind that renders the proceeding itself irregular and invalid.'"  *Ragbir*, 950 F.3d at 63 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974), and *United States v. Woods*, 986 F.2d 669, 676 (3d Cir. 1993)).  It is axiomatic that the failure to prove an essential element of an offense constitutes plain error which can constitute a miscarriage of justice.  *United States v. Castro*, 704

---

[3] The Court also acknowledges that there was still a delay of some 13 months between the issuance of the decision in *Rehaif* and the filing of De Castro's petition for *coram nobis* relief and that the Government therefore makes a cogent argument that sound reasons for his failure to seek relief earlier do *not*  exist.  De Castro, however, also advances a reasonable explanation for the delay insofar as he is no longer residing in the United States and thus does not have easy or ready access to legal resources or to his attorney.  In view of De Castro's current residency and in further recognition of the truly unusual and extenuating circumstances posed by the Covid-19 pandemic, the Court believes the interests of justice are best served by deeming this third prerequisite satisfied.

F.3d 125, 138 (3d Cir. 2012); *United States v. Jones*, 471 F.3d 478, 480 (3d Cir. 2006).  The necessary prerequisites having been shown, the Court turns to the merits of De Castro's petition.

De Castro stands convicted of a violation of 18 U.S.C. § 922(g)(5)(A), which makes it unlawful "for any person … who, being an alien … is illegally or unlawfully in the United States; … to … possess in or affecting commerce[] any firearm or ammunition …."  Further, under 18 U.S.C. § 924(a)(2), outlining the penalties for violations of the Firearms Act, 18 U.S.C. § 921 *et. seq.*, "[w]hoever knowingly violates subsection … (g) … of section 922 [18 U.S.C. § 922] shall be fined as provided in this title, imprisoned not more than 10 years, or both."  18 U.S.C. § 924(a)(2).

In *Rehaif v. United States*, the case upon which De Castro relies to support his *coram nobis* petition, the Supreme Court for the first time addressed the meaning and scope of the word "knowingly" in the context of a violation of § 922(g)(5)(A).  Reasoning that "by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." The Supreme Court stated:

> We hold that that the word "knowingly" applies both to the defendant's conduct and to the defendant's status.  To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it.

*Rehaif*, 139 S. Ct. at 2194, 2196.  Here, De Castro asserts that because the Court never informed him that the Government was required to prove **both** that he knew he was in possession of a firearm **and** that he knew he was illegally in the country, his conviction under the foregoing statutes is invalid.

It is the "general rule that a constitutional error does not automatically require reversal of a conviction. *Chapman v. California*, 386 U.S. 18, 24 (1967). "If the government can show 'beyond

a reasonable doubt that the error complained of did not contribute to the verdict obtained,' then the error is deemed harmless and the defendant is not entitled to reversal.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017).  However, where, an error "affects the framework within which the trial proceeds," it is structural and defies harmless error analysis.  *Id,* at 1903 (citing *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).   When a structural error is objected to and then raised on direct review, the defendant is entitled to relief without any inquiry into harm." *Id*.

De Castro also claims he did not know he was illegally in the United States, and in fact he reasonably believed he was lawfully present because the I-130 petition had been approved and he had been advised his visa application was eligible for further processing.  The Government rejoins that this argument is unavailing given that the language contained in the Indictment clearly avers the necessary elements of the offense with which Mr. De Castro was charged:

> On or about September 22, 2014, in the Eastern District of Pennsylvania, defendant **AMIN DE CASTRO**, an alien, and native and citizen of the Dominican Republic, who was unlawfully in the United States, knowingly possessed in and affecting interstate commerce a firearm, that is a Bersa, model Thunder 380, 380-caliber pistol with serial number D65395, loaded with 8 live rounds of .380 caliber ammunition and 1 live round in the chamber.

> In violation of Title 18, United States Code, Section 922(g)(5)(A).

The Government is generally correct that where the language of an indictment substantially tracks the language of the statute, the indictment is sufficient on its face.  *See, United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000).  But while the indictment may be sufficient, more is required under § 924(a)(2).  Hence, *Greer v. United States*, 141 S. Ct. 2090 (2021), is dispositive of the matter at hand.

*Greer* involved two separately - convicted felons in possession of firearms (one of whom had pled guilty).  Since *Rehaif* was decided after their guilty plea and trial, the defendants raised new *mens rea* claims on appeal in an effort to overturn their convictions.  The question before the

Court in *Greer* was whether the defendants were entitled to plain error relief for their unpreserved *Rehaif* claims.[4]   Rule 52(b) provides "[a] plain error that affects substantial rights may be considered even though it was not brought to the Court's attention." Fed. R. Crim. P. 52(b).  Given that Rule 52(b) is permissive, not mandatory, a defendant must satisfy three threshold requirements to establish eligibility for plain error relief:

> *First*, there must be an error.  *Second*, the error must be plain.  *Third*, the error must affect "substantial rights," which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  …  If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings."

*Greer*, 141 S. Ct. at 2096-97 (citing *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904-05(2018), and *United States v. Olano*, 507 U.S. 725, 735-737 (1993)).

The burden of establishing entitlement to plain error relief lies with the defendant and can only be satisfied by establishing all four requirements.  *Id*. at 2097 (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)).  In the context of a guilty plea, the defendant "has the burden of showing that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a 'reasonable probability' that he would not have pled guilty."  *Id*.

In this case, De Castro did not previously present his *mens rea* arguments to the Court and thus Rule 52(b) is applicable. De Castro fails to make the necessary showing, however, and in fact does not even advance the argument that he would not have entered his guilty plea had he been so advised.   As the *Greer* Court observed, "structural errors are errors that affect the entire conduct of the proceeding from beginning to end," but "discrete defects in the criminal process - such as

---

[4] Both defendants had obviously forfeited their *mens rea* claims by failing to properly preserve them in accordance with Federal Rule of Criminal Procedure 51(b), and therefore plain error review was appropriate under Rule 52(b).

the omission of a single element from jury instructions or the omission of a required warning from a Rule 11 plea colloquy - are not structural   …  " 141 S. Ct. at 2100.  Plain error review is therefore clearly appropriate here under Rule 52(b).

In any event, the Court finds there was no *Rehaif* error in this case.  Mr. De Castro had ample notice from both the guilty plea colloquy[5] and the Indictment that he was being charged with

---

[5] At De Castro's Change of Plea hearing on April 12, 2017, the following exchange took place:

THE COURT:  And you understand that the Government, all they have to prove to prove [you're] guilty beyond a reasonable doubt, is that you were an alien and that you were in possession of a firearm as stated in the - in the indictment.

In other words, they have to prove that you knowingly possessed a firearm as charged in the indictment and that at the time that you had the weapon with you - the weapon - that you were illegally in the United States and unlawfully in the United States and that the possession of the firearm was in or affecting commerce.  And that simply means that that weapon came from somebody outside the - the Commonwealth of Pennsylvania, you understand that, right?

THE DEFENDANT: Yes, Sir.

THE COURT: I think, we had testimony on those issues at trial in any event, but you understand that it would be the Government's obligation to prove that charge beyond a reasonable doubt?

THE DEFENDANT: I understand, sir.

(N.T. 4/12/17, pp. 28-29).  …

THE COURT: And you understand that, of course - and we'll talk about it in a few minutes - that one of the consequences of your decision to plead guilty, is that you're going to be deported, right?

THE DEFENDANT:  Yes, sir, hm-hmmm.

(N.T. 4/12/17, p. 30).  …

THE COURT:  And you are - are in agreement, that one of the consequences of this case - `cause you're not a citizen, you are a citizen of the Dominican Republic - is that you understand one of the collateral consequences is that you will be - you will be deported and denied admission to the United States in the future, right?

knowingly being an unlawful alien and with knowingly possessing the firearm in question and that the onus was on the Government to prove both elements to prevail at trial.  Having had the requisite notice and having failed to make the showing required to meet his burden of establishing an entitlement to plain error relief, De Castro is not entitled to relief under *Rehaif* and his petition for writ of error *coram nobis* is also properly denied on this basis.

  An appropriate Order follows.

             BY THE COURT:

             /s/ Juan R. Sanchez

             _____

             Juan R. Sanchez    C.J.

---

THE DEFENDANT:  Si, senor.

THE COURT:  If I understood it correctly, you had consulted a lawyer about this, right?

THE DEFENDANT:  Yes, sir.

THE COURT:  And so, you have consulted the lawyer and you know that one of the immediate consequences is potential deportation and you will be denied admission to reenter the United States in the foreseeable future, unless the - the Attorney General grants you permission, you understand that, right?

THE DEFENDANT: Yes, sir.

THE COURT: And of course, understanding the consequences, you still want to plead guilty?

THE DEFENDANT: Yes, sir.

(N.T. 4/12/17, pp. 38-39).